JOHN G. McBEE ET AL. V. ROBERT JOHNSON ET AL.

1. PROBATE SALE—IRREGULARITIES.—At the April Term, 1857, of the Probate Court of Kaufman county, an order was made allowing the application of an administrator to sell "the real estate of the decedent, consisting of four hundred and six acres of land," fixing the time and place of sale, and directing that the sale be "in accordance with law." The inventory showed that the only land owned by the estate was a tract of four hundred and six acres. The administrator returned an account of sale of four hundred acres, at $2.35 per acre, amounting to $954.10. At the July Term thereafter the court approved the sale, and ordered that the administrator "make a good and sufficient deed to the purchaser." The administrator executed a deed, attempting to give field-notes, but misdescribing the land. The purchase-money was paid by the purchaser: Held, (1) That the absence of particular description in the proceedings ordering and approving the sale was at most an irregularity, and not rendering the proceedings void ; (2) that the order of sale, sale, confirmation, and payment of purchase-money constituted an equitable title, without deed ; and (3) the execution of an imperfect deed did not affect the rights of the vendor.

2. PLEADINGS—DISCLAIMER.—Where a disclaimer makes an exception which is imperfect in its description, but which, taken in connection with the petition and the evidence adduced by plaintiff, can be understood to apply to a definite tract, the court will so hold and regard the issue of not guilty as applying to such part so designated.

ERROR from Kaufman. Tried below before the Hon. A. J. Fowler.

·  John G. McBee and others brought an action of trespass to try title against Robert Johnson and Jasper Edmiston

for "so much of the league and labor of land granted to W. H. McBee by the State as is located in Kaufman county."

February 2, 1872, defendants pleaded not guilty. September, 1872, the defendants amended, and say "they are in possession of and claim the following land, to wit, four hundred and six acres of land, a part of the W. H. McBee survey named in plaintiff's petition, beginning at the west corner of survey Nos. 6 and 7, and marked 'D,' at a stake from which a black-jack bears S. 30° E. four and a half varas; a hickory bears N. 86° E. two varas; thence S. 45° W. twenty varas; a branch, twenty-seven hundred and seventy varas; stake, from which a honey bunch of honey locusts bears S. 45° W. thirty-five varas; thence N. 45° E. four hundred and seventy-five varas; a stake in prairie from which a grove of persimmons bears N. 80° E.; thence N. 45° W. twenty-two hundred and ninety varas; a branch, twenty-three hundred and eighty varas; timber, forty-one hundred and thirty varas, to the beginning,—it being the land conveyed by Henry Scoggin, administrator, &c., to Robert and Mathew Johnson, on 30th July, 1857; and they say they have never claimed any other part or partition of the W. H. McBee survey; and they have disclaimed any ownership in and to any part of said McBee survey, except the land above described."

October 2, 1873, plaintiffs amended, and say "that said defendants are in the possession, use, and occupation of the land claimed and owned by plaintiffs; that is to say, that first part of said league set apart in partition thereof to William H. McBee, containing four hundred and six acres, to wit: Beginning at the west corner of Nos. 6 and 7, as numbered in the partition and on the plat thereof; thence S. 45° W. four hundred and seventy-five varas; thence S. 45° E. twenty varas, a branch, forty-eight hundred and thirty varas, a corner; thence N. 45° E. four hundred and seventy-five varas, corner; thence N. 45° W. forty-eight hundred and thirty varas, to the beginning, which land is more definitely described in the decree and report of commissioners, made by

the County Court of Vanzant county;" praying judgment for rents, &c., &c.

On the trial, plaintiffs read in evidence a patent to William H. McBee for a league and labor of land, and a decree of partition of the league and labor among his heirs, in which that part allotted to William H. McBee is described as follows: "Beginning at the west corner of Nos. 6 and 7, and marked 'D,' from which a black-jack bears S. 30° E. four and a half varas; a hickory bears N. 86° E. two varas; thence S. 45° W., crossing a branch several times, four hundred and seventy-five varas; a stake from which a post oak bears N. 10° E. six varas; a hickory bears S. 85° E. eleven and a half varas; thence S. 45° E. twenty varas; a branch, twenty-seven hundred and seventy varas; a prairie, thirty-one hundred and forty varas; a branch, forty-eight hundred and thirty varas; a stake, from which a branch of honey locusts bears S. 45° N. thirty-five varas; thence N. 45° E. four hundred and seventy-five varas; a stake in prairie, from which a grove of persimmons bears N. 80° E.; thence N. 45° W. twenty-two hundred and ninety varas; a branch, two hundred and thirty varas; timber, forty-eight hundred and thirty varas, to the place of beginning."

It was admitted by defendants that the land in controversy, described by plaintiffs' amended petition and occupied and claimed by the defendants, was the property of William N. McBee, deceased, one of the children and heirs of W. H. McBee at the time of his death; and that the plaintiffs were the heirs of the said William N. McBee, who was dead; and that the defendants were in the possession of the land described in the amended petition and claimed by them.

The defendant read in evidence an order of sale, the inventory returned by Henry Scoggins, administrator of the estate of William N. McBee, the return of sale by Scoggins, and order of court confirming sale and ordering deed to be made to the purchasers. These proceedings are given in the opinion. Defendants, over objection, read deed of date July

31, 1857, of Henry Scoggins, administrator of William N. McBee, for the land described as in the disclaimer to Robert and Mathew Johnson, the purchasers.    Mathew Johnson conveyed to defendant Edmiston.

Defendant Edmiston testified that on or about the day of the date of the deed from Scoggins, witness saw defendant Johnson pay the purchase-money to Scoggins, who was then the administrator of William N. McBee's estate; that soon after the date of the deed, witness and one of the Johnsons went into possession of the land under said purchase, and remained in quiet and peaceful possession of the land up to the trial, knowing nothing of the claim of plaintiffs until the filing of their suit; that witness and Johnson believed they had a good title, and that some of plaintiffs resided in the neighborhood and never set up claim to the land before suit.

E. P. Chisolm testified that at the request of the Johnsons he attended the sale and bid off the land for them, they taking the deed and paying therefor, as was understood.    It also appeared that William N. McBee owned no other land than that in controversy at his death.    Verdict and judgment for defendants.    Motion by plaintiffs for new trial was overruled, and they prosecute error to this court.

*Robertson & Herndon,* for plaintiffs in error.—It will be found on examination of the record that the evidence relied on by defendants to establish their title to the land in controversy is a record of the Probate Court of Kaufman county, containing an order of sale, a report of sale, and a confirmation of sale of the "real estate" of William N. McBee, deceased; also a deed from Henry Scoggins, administrator of the estate, to defendants.    To all of this testimony, plaintiffs objected, 1st, Because the order of sale contains neither a description of the land nor the terms of the sale; 2d, Because the evidence above named does not describe the land in controversy, and is irrelevant.

By an inspection of the order of sale it will be seen that there is no attempt to describe the land ordered to be sold, neither is there any intimation or mention of the terms upon which the sale was to be made. It was left entirely with the administrator what "real estate" he would sell under that order, and upon what terms he would sell the same. The statute is positive in its requirement of what a probate order for the sale of property shall consist. (Paschal's Dig., art. 1321.) "Every order of sale of real estate shall be entered on the minutes of the court, describe the property to be sold, and the terms of sale." These two last were not done: 1st, It shall describe the property; 2d, It shall prescribe the terms of sale. In the probate order in question there has been no attempt to comply with the statute. Neither of the constituent parts of a probate order is found in this one. It is therefore a nullity, and the sale made in obedience to it a nullity. An order of court made contrary to the statute is a nullity. (Rorer on Judicial Sales, secs. 8 and 479; 7 Tex., 242.) It is not stated in the record for what purpose the "real estate" of William N. McBee was ordered to be sold. It may have been to "raise the amount of allowance that may be made under the provisions of the forty-fourth and forty-fifth sections of this act, or for the satisfaction of a mortgage or other lien on said land, in which case such sales shall be made on such terms as the Chief Justice may direct." (Paschal's Dig., art. 1322.) If so, the terms of the sale were to be ordered in the sound discretion of the court, and no general order could confer such discretion upon the administrator. (7 Tex., 242.) This is one reason the statute requires the terms of the sale to be prescribed in the order of the court. (Paschal's Dig., art. 1321.) The administrator is a mere instrument or organ of the court, and has no discretion, nor can the court delegate powers to the administrator conferred upon it by statute. (7 Tex., 224.)

In this case a general order, such as defendants invoked, would confer upon the administrator power to sell all or any

part of the "real estate" of his intestate, and also would leave it in his discretion to fix the terms. The order purports to recite the substance of the application. It does not appear by such recital that the court had jurisdiction to order a sale, no cause for such sale being alleged. The court, therefore, had no jurisdiction. The application would have been bad on general demurrer, and therefore the jurisdiction of this court could not have attached (Paschal's Dig., art. 1314) for requisites of application. (Rorer on Judicial Sales, sec. 71 and note.)

Even admitting the order of court not to be void, still it should have been excluded from the jury, together with the report of sale, confirmation of sale, and administrator's deed, because they do not describe the land sued for. The only attempt to describe the lands claimed by defendants in all their muniments of title is the description contained in the administrator's deed. If this is to be taken as a means of identifying the lands ordered to be sold, then they have set up a title to another tract of land than that sued for by plaintiffs. An inspection of the descriptions in connection with the plat in the transcript will show, that the two descriptions, the one of plaintiffs contained in the amended petition, and also in the record of partition, and the one of defendants contained in the administrator's deed, show the same beginning corner. Follow out the description of plaintiffs on the plat, and then follow out the attempted description of defendants, as contained in the administrator's deed, and they do not correspond. The defendants' description is unintelligible, it is true, but seems to be an attempt to describe land lying adjacent to that of plaintiffs. This administrator's deed contains the only description by which the defendants attempt to identify the land sold by order of court as the land sued for by plaintiffs. These records, therefore, of the Probate Court, including the administrator's deed, should not have been admitted as evidence.

The equitable title sought to be established by proving the

payment of the purchase-money by defendants to the administrator must fall with their legal title. Exclude from consideration the administrator's deed, and the order of sale stands alone as the means of identifying the land claimed. If the order of sale is void, the administrator's power to sell was void, and he could convey no sort of title, legal or equitable, to the land. The defendants have set up no equitable title in their pleadings, and there are no allegations to let in the proof, and the court should not have permitted the verbal testimony of the payment of purchase-money and entrance into possession. The legal title was all the defendants could rely on in this suit.

The land described in plaintiffs' petition and his title, and the land set up as purchased at the administrator's sale by defendants is not the same land. If there was a mistake in the description of the land, it could only be corrected by the records, if there is anything to correct by.

To understand that defendant claims one tract of land and plaintiff another, it is necessary to trace the land described by each, and then it will be found that the lands are not the same.

*Ferris & Getzendaner*, for defendants in error, cited Lynch v. Baxter, 4 Tex., 431; Flanagan v. Pierce, 27 Tex., 79; Poor v. Boyce, 12 Tex., 449; Bartlett v. Cocke, 15 Tex., 479.

*J. J. Hill*, also for defendants in error, cited Thomas r. Le Baron, 8 Met. (Ky.); Sheldon v Wright, 1 Selden, (N. Y.,) 497; Jones v. Taylor, 7 Tex., 240; 28 Ala., 164; Rorer on Jud. Sales, secs. 1, 2, 11, 12, 14, 15, 80, 86, 222, 308, 463; Grignon v. Astor, 2 How., 338; Sheldon r. Newton, 3 Ohio St., 494; Sedg. on Stat. & Const. Law, 368, 380; Sayles's Prac., 597; 41 Ala., 26; Williamson v. Berry, 8 How., 546; Striker v. Kelly, 7 Hill, 9; 19 Wend., 143; Thompson v. Tolmie, 2 Pet., 157; Parker v. Kane, 22 How., 14; Iverson v. Loberg, 26 Ill., 179; 13 Ill., 179; 6 Ohio, 472; Burdett v. Silsbee, 15 Tex., 604; Alexander v.

Maverick, 18 Tex., 179; George v. Watson, 19 Tex., 369; Withers v. Patterson, 27 Tex., 501; Soye v. McCallister, 18 Tex., 98; Baker v. Coe, 20 Tex., 430; Howard v. Richeson, 15 Tex., 557; Giddings v. Steele, 28 Tex., 750; Howard v. Bennett, 13 Tex., 313; Florentine v. Barton, 2 Wall., 216; Hatchett v. Conner, 30 Tex., 112; Rice v. Lemon, 16 Tex., 593; 11 Ired., 616; 7 Ham., 178.

GOULD, ASSOCIATE JUSTICE.—The subject-matter of this suit of trespass to try title, is four hundred and six acres of land, part of the W. H. McBee headright, claimed by the appellants as the heirs of W. N. McBee, deceased, and claimed by the appellees (defendants in the District Court) under a sale by the administrator of the estate of said W. N. McBee. The validity of that sale is the main question in the case, the appellants contending that the order of sale does not "describe the property to be sold and specify the terms of sale," as required by the statute then in force, (Paschal's Dig., art. 1321;) and that therefore the order is a nullity, and was erroneously admitted in evidence over their objection.

The order of sale was made by the County Court of Kaufman county in April, 1857, and is as follows: "This day comes into court Henry Scoggins, administrator of the estate of W. N. McBee, deceased, and presents his petition, praying for an order to sell the real estate of said deceased, consisting of four hundred and six acres of land; which petition was allowed by the court. And it is further ordered by the court that said sale take place on the first Tuesday in June, A. D. 1857, at the court-house door, in the town of Kaufman, in accordance with law."

The inventory of W. N. McBee's estate was in evidence, and shows but one piece of real estate, thus described: "406 acres of land, (valued,) at $10 per acre." In June, 1857, the administrator reports a sale, had in obedience to the order of the court, on Tuesday, the 2d of that month, at the court-house door in Kaufman, as follows: "400 acres of land, pur-

chased by Enoch P. Chisolm for $2.35 per acre, upon twelve months' credit, with approved security, and mortgage upon said land for the purchase-money—making it nine hundred and fifty-four dollars and ten cents, ($954.10.)"

The mistake in the quantity of land (given only in figures) is evidently clerical, the total price or purchase-money being computed for four hundred and six acres. By an indorsement on this return of sale, signed by the chief justice of Kaufman county, it appears that the sale was approved, as further appears by the following order, made at the July Term of the Kaufman County Court: "Now comes into court Henry Scoggins, administrator of the estate of W. N. McBee, and presents his sale bill of certain property belonging to said estate, which is hereby approved and ordered to be recorded. And be it further ordered, that the administrator be required to make a good and sufficient deed to the purchaser."

It was proven by Chisolm that he bid off the land as agent for Robert and Mathew Johnson; and it was also in evidence that the Johnsons paid the purchase-money, and went into possession, receiving from the administrator a deed to four hundred and six acres of the W. H. McBee headright, which deed purports to be made in pursuance of the order confirming the sale, and attempts to give the field-notes of the tract conveyed. The field-notes, as given, in consequence of a clerical omission of a few words, fail to properly describe the land; but by comparing them with the field-notes of that part of the W. H. McBee headright allotted to W. N. McBee, which were in evidence, it is plain that the object was to copy the field-notes of the latter tract.

Without reference, however, to this deed, we think that the order of sale, taken in connection with the inventory, sufficiently describes the real estate ordered to be sold to admit of its being identified; and further, that taken in connection with the general provision of the law, that sales of land for the payment of debts, (save in certain specified

cases,) shall be made on a credit of twelve months, the terms of the sale were sufficiently specified.

In a recent case which was here decided, following the former rulings of this court, which are there referred to, an order of sale, very similar to this in its description of the property to be sold, was held to be valid. The failure to give a full description of the land in the orders of the court, where sufficient appears to admit of its identification, and the failure to specify at length the terms of sale, where the intention is plain that the sale should be made on the usual terms, are at most mere irregularities, which cannot be held to make the orders and proceedings nullities.

The order of sale, the sale, the confirmation thereof, and the compliance by the purchaser with the terms of sale, (which last is certainly accomplished by the payment of the purchase-money,) constitute an equitable title, sufficient to protect the purchaser, without a deed from the administrator. (Sypert *v.* McCowen, 28 Tex., 638; Bartlett's Heirs *v.* Cocke, 15 Tex., 477.)

It follows, from what has been said, that there was a valid sale, sufficient to protect the defendants, notwithstanding any defects in the administrator's deed, unless the plaintiffs were right in the further objection made to the admission in evidence of these orders and proceedings, that they were, under the pleadings, irrelevant.

The original petition claimed so much of the W. H. McBee headright league and labor as was located in Kaufman county. The defendants first answered by a plea of not guilty, and afterwards answered specially, claiming 406 acres of the W. H. McBee survey, named in plaintiffs' petition, giving the same imperfect field-notes that were given in the administrator's deed, adding, that it was the same land conveyed to them by the administrator, and disclaiming as to any other part of the W. H. McBee survey. The plaintiffs, by an amendment, recite the disclaimer of defendants, and allege that defendants are in possession of the land claimed by

plaintiffs; "that is to say, that part of said league, set apart and partition thereof to W. N. McBee, containing 406 acres," giving the field-notes thereof. These field-notes so far correspond with the field-notes of the tract claimed by defendants as to make it evident that the disclaimer of defendants was not intended to apply to the 406 acres in controversy. The only intelligible construction of defendants' disclaimer is, that it applied to all of the W. H. McBee survey, except 406 acres sold by the administrator of W. N. McBee's estate. In fact the plaintiffs, in making out their case, produced in evidence the admission of defendants, that the land in controversy, described in plaintiffs' amended petition, was the property of William N. McBee, deceased, one of the children and heirs of W. H. McBee at the time of his decease; that plaintiffs were the heirs of said W. N. McBee, and that the defendants were in possession of the land described in plaintiffs' amended petition. The case was tried under pleadings bringing in issue the plaintiffs' title to this 406 acres of land, and the evidence offered was certainly relevant to that issue.

There is an assignment of error, that the court erred in its charge to the jury, which might be disregarded, as not sufficiently specific.

Whilst the charge of the court may be in some respects open to criticism, as not applicable under the pleadings, we find in it nothing calculated to mislead the jury as to the real issues on which they had to pass. Under the evidence the verdict was the only one which could have been properly returned. The judgment is affirmed.

AFFIRMED.