WILKIN et al. v. SIMMONS et al.

(Court of Civil Appeals of Texas. Amarillo. Nov. 16, 1912. Rehearing Denied Dec. 14, 1912.)

1. EXECUTORS AND ADMINISTRATORS (§ 383*)— SALE OF LAND—COLLATERAL ATTACK.

A sale of land upon an administrator's application for its sale on the ground of the necessity for the support of minor heirs, and that it is for the best interest of the estate, is merely erroneous, and not absolutely void so as to allow collateral attack on the ground that it was for an unauthorized purpose.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. § 1554; Dec. Dig. § 383.*]

2. EXECUTORS AND ADMINISTRATORS (§ 349*)— SALE—JURISDICTION OF PROBATE COURT.

If the probate court acquires jurisdiction of the property of an estate and of the persons interested therein, it has complete jurisdiction so that its order of sale can only be tested in direct proceedings and not on collateral attack.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 1446, 1449–1455; Dec. Dig. § 349.*]

3. JUDGMENT (§ 495*)—COLLATERAL ATTACK.

Every presumption is in favor of the jurisdiction of a court of general jurisdiction in a collateral attack on its judgment.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 933, 934; Dec. Dig. § 495.*]

4. EXECUTORS AND ADMINISTRATORS (§ 326*)— SALE OF LAND — PURPOSE — SUPPORT OF MINOR CHILDREN.

If the probate court had fixed the allowance for the support of a widow and minor children of decedent, and there was a necessity for providing funds for a year's support of the children, it was authorized to order a sale of land of the estate, on the administrator's application, for the support of such heirs.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. § 1343; Dec. Dig. § 326.*]

5. EXECUTORS AND ADMINISTRATORS (§ 326*)— ADMINISTRATOR'S SALE—JURISDICTION.

The existence of orders by the probate court fixing the allowance for the year's support of minor children and the amount of the allowance in lieu of exempt property would not be necessary to give the court jurisdiction to order the sale of land of the estate for the support of such children as heirs.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. § 1343; Dec. Dig. § 326.*]

6. EXECUTORS AND ADMINISTRATORS (§ 349*)— SALE—VALIDITY.

The question whether a sale of the land was necessary for the support of minor heirs, on an administrator's application for a sale for that purpose, was for the determination of the probate court, and its judgment thereon cannot be collaterally attacked.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 1446, 1449–1455; Dec. Dig. § 349.*]

7. EXECUTORS AND ADMINISTRATORS (§ 349*)— SALE OF LAND—DESCRIPTION.

The land sold on an administrator's application for its sale for the support of minor heirs was described in the patent to decedent L. as the "L. pre-emption survey of 160 acres in H. county, known as survey No. 2, block M. & L.," etc., giving field notes. L. and others laid out the town of P. and dedicated the streets,

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

etc., "of said town of P. in said county of H., as shown by the accompanying map of said town"; the north part of the town being the south half of the L. pre-emption. The administrator's application for an order of sale described the property as "a certain tract of realty belonging to the estate of L., and said real estate is here described as all those lots. yet unsold belonging, situated in the county of H., and better known as the north half of the town of P., patented to L. by virtue of the pre-emption laws." *Held*, that the land sold was sufficiently described so as to make the order of sale valid on collateral attack.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 1446, 1449–1455; Dec. Dig. § 349.*]

8. EXECUTORS AND ADMINISTRATORS (§ 388*)— ADMINISTRATOR'S SALE — NECESSITY OF DEED.

An order of sale of the land of an estate, report thereof, and confirmation, are sufficient to give the purchaser title without the execution of a deed, so that it is immaterial that a deed was made before the order of confirmation.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 1573–1582; Dec. Dig. § 388.*]

9. EXECUTORS AND ADMINISTRATORS (§ 31*)— OUSTER—APPOINTMENT OF GUARDIAN.

The appointment of a guardian of minor heirs did not ipso facto oust the administrator of decedent's estate, in view of Rev. Civ. St. 1911, art. 3235, providing that upon a death intestate decedent's property shall vest in his heirs at law, but all of his estate shall pass to the administrator for distribution pursuant to law; the appointment of the guardian, who was an aunt of the heirs, being advisable so that they could reside with her at the homestead.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 186–190; Dec. Dig. § 31.*]

Appeal from District Court, Hale County; F. P. Greever, Special Judge.

Suit by R. H. Wilkin against A. W. Simmons and another, impleaded, in which one McCormick intervened. From a judgment against plaintiff and intervener, they both appeal. Affirmed.

J. L. Penry, of Amarillo, L. C. Penry, and Randolph & Randolph, all of Plainview, for appellants. Madden, Trulove & Kimbrough, of Amarillo, for appellees.

PRESLER, J. This is a suit by appellant R. H. Wilkin in the form of trespass to try title to lots Nos. 27 and 28 in block No. 31, in the town of Plainview, Hale county, Tex., in which the appellant McCormick intervened, seeking to recover a half interest in the same property. The appellee (L. B. Simmons) answered by general demurrer, plea of not guilty, general denial, and a special answer, setting up the statute of limitation; also by special answer impleading his warrantor, J. C. Pipkin. The original defendants other than the appellee having been dismissed, the case proceeded to trial before the court without a jury and resulted in a judgment in favor of appellee (L. B. Simmons) and against the plaintiff and the intervener, and also in favor of the warrantor, J. C. Pipkin. From this judgment

both appellants duly appeal to this court and here seek to have said cause reversed and rendered in their favor upon errors assigned.

In our opinion, it is apparent from the record that the entire case as presented by the appeal turns upon the question of the validity of the sale by C. H. Gilbert, administrator of the estate of E. L. Lowe, to J. C. Pipkin, which included the two lots sued for and three other lots in the same block in the town of Plainview; the deed reciting a consideration of $177.50. The validity of this sale, as shown under appellant's tenth assignment of error, is attacked upon the ground that the orders of the probate court of Hale county, Tex., supporting this sale, are invalid and subject to collateral attack because it is claimed that the probate court was without jurisdiction to enter the orders and that such lack of jurisdiction appears upon the face of the record, in that the application and the order of sale are not authorized by law. It appears from the evidence that E. L. Lowe died in Hale county, Tex., in 1889, and that C. H. Gilbert was duly appointed and qualified as administrator of said Lowe's estate; that said Lowe left a will not naming an executor, bequeathing $1,280 to said Gilbert in trust, to be used by him and interest to be paid to the two children which the deceased left surviving him, and leaving the remainder of his property to be distributed according to law; that deceased at the time of his death was a widower and left as his only heirs at law two little girls, one named Janie, about five years of age, and one named Mattie, who was also a minor; that Mattie first married a man by the name of Davis, from whom she was afterwards divorced, and then married a man by the name of Paulson, with whom she still lives; that Janie married a man by the name of Quillen; that the lots in controversy were not a part of the homestead of deceased; that deceased's family at the time of his death consisted of himself, the two little girls, and M. A. Lowe, an aunt of their deceased mother, a sister of C. H. Gilbert, the widow of deceased's brother; that Gilbert also lived at deceased's home when in town; that some time after the appointment and qualification of said C. H. Gilbert as administrator of the estate of deceased, the said M. A. Lowe was appointed guardian of the two children; that the said guardian and Gilbert, the uncle and aunt of the two children, continued to keep house as Lowe had done and took care of the children, using the proceeds of the sale of the property belonging to the estate for that purpose; that Gilbert got the orders of the court shown in the record and with the knowledge and consent of his sister, guardian of the children, sold the lands and used the proceeds for paying the expenses incurred by her in tak-

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

ing care of the two children; that he did this because the children had no other means of support; that as administrator of the estate he had a settlement with Mrs. Lowe, the guardian, and accounted to her for all the proceeds that he got from the sale of the land; that the children got the benefit of these proceeds through their guardian for food, clothing, and education; that the money received from Pipkin for the two lots in controversy was used for the support of said children. Gilbert testified that he did not use the money for any other purpose than for the children.

From the inventory and list of claims filed by the administrator, it further appears that the estate consisted largely of real estate, and that there were debts owing by the estate in addition to the legacy of $1,280 bequeathed to the said Gilbert. There was also an insurance policy of $2,000; but whether this was a part of the estate or not, or who were the beneficiaries, does not conclusively appear further than it appears to have been collected by the administrator of the estate and turned over to the guardian of the minors upon her receipt therefor. It does not appear how this money was used by said guardian. The foregoing appearing to be the condition of the estate at the May term, 1890, the administrator made the following application to the county court: "Estate of E. L. Lowe, deceased, In the County Court of Hale County, Texas, May Term, 1890, Sitting in Probate. To the Honorable J. C. Burch, Judge of Said Court, Presiding: Your petitioner, C. H. Gilbert, administrator of the estate of E. L. Lowe, deceased, respectfully represents to said court that there is a certain tract of real estate belonging to the said estate of E. L. Lowe and said real estate is here described as all those lots yet unsold belonging, being situated in the county of Hale and state of Texas, and better known as the north half of the town of Plainview, patented to E. L. Lowe, by virtue of the pre-emption laws of the state of Texas. Your petitioner further represents that it is necessary for the support and maintenance of the heirs and for the best interest of said estate that said property hereinbefore described be sold at private sale for cash or on such terms as you may think best for said estate. [Signed] C. H. Gilbert"—and sworn to.

The order granting the application and directing the property to be sold is as follows: "The estate of E. L. Lowe, May 6, 1890. Now comes on to be heard the application of C. H. Gilbert, administrator of the estate of E. L. Lowe, deceased, asking that an order of court be granted to sell at private sale certain lots in the town of Plainview, Tex., and it appearing to the court that it is necessary for the support and maintenance of the heirs that said property be sold, it is therefore ordered and adjudged by the court that C. H. Gilbert, administrator of the estate of E. L. Lowe, deceased, be granted full power to sell so much of the real estate belonging to said estate, situated in the town of Plainview, as is necessary for the support and maintenance of said heirs, and that said sales be made in private and for cash or on a credit as may be in the mind of said administrator for the best interest of said estate." The notation on the judge's docket is as follows: "May 6, 1890. Application to sell real estate approved." So much of the administrator's report of sale as relates to the lots in question is as follows: "To the Honorable County Court of Hale County, Sitting in Probate at the Regular Term of Said Court of Hale County, Sitting at its Regular November Term, A. D. 1890, J. C. Burch, County Judge, Presiding: I beg to represent that pursuant to an order of your court, passed at the May term, 1890, I, C. H. Gilbert, administrator of the estate of E. L. Lowe, deceased, have since that time made the following sales of real estate belonging to said estate: * * * To J. C. Pipkin, lots 27, 28, 29, 30 and 31, block 31, consideration $177.50, cash, July 12, 1890. I, C. H. Gilbert, administrator, * * * of the estate of E. L. Lowe, deceased, do solemnly swear that the above and foregoing is a true and correct list of all of the sales made by me under the order of court passed at the regular May term of your court, providing for the sale of certain real estate belonging to the estate of E. L. Lowe, and respectfully ask that said sales be confirmed. C. H. Gilbert, Administrator. Sworn to and subscribed before me this the 7th day of November, 1890"—the place for the signature of the officer being blank. The order of the court, approving the sale, is as follows: "Estate of E. L. Lowe, deceased, November 7, 1890. Now at this time came on to be heard the above and foregoing report of C. H. Gilbert, administrator of the estate of E. L. Lowe, deceased, as to the real estate sold by him belonging to said estate, and the court, after hearing said report read and duly considering the matter, is of the opinion that said sale should be in all things confirmed and said report approved. It is therefore ordered and decreed by the court that said report be and the same is hereby in all things approved and the sales mentioned therein confirmed, and that C. H. Gilbert, administrator as aforesaid, is hereby authorized to make good and sufficient conveyance in law to the several purchasers of the real estate mentioned in the above report."

The administrator's deed to J. C. Pipkin appears to have preceded the confirmation order, having been executed on the 17th day of July, 1890, and, together with the acknowledgment and certificate of registration thereof, is as follows:

"The State of Texas, County of Hale. Know all men by these presents, that I, C.

H. Gilbert, administrator of the estate of E. L. Lowe, deceased, and of the county of Hale and state aforesaid, for and in consideration of the sum of one hundred and seventy-seven and 50-100 dollars to me in hand paid by J. C. Pipkin, have granted, sold and conveyed and by these presents do grant, sell and convey unto the said J. C. Pipkin, of the county of Hale and state of Texas, all those certain tracts and lots of land situated in Plainview, Texas, known and described as lots numbers 27, 28, 29, 30 and 31, in block 31, as shown by the town plat of Plainview, which is of record in the clerk's office of Hale county, Texas. To have and to hold the above-described premises together with all and singular the rights and appurtenances thereto in any wise belonging unto the said J. C. Pipkin, his heirs and assigns, forever, and I do hereby bind myself, my heirs and successors, in office to warrant and forever defend all and singular the said premises unto the said J. C. Pipkin, his heirs and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof. Witness my hand at Plainview, this 17th day of July, A. D., 1890. C. H. Gilbert, Administrator. Signed and delivered in the presence of ————.

"The State of Texas, County of Hale. Before me, S. P. Strong, clerk of the county court in and for Hale county, Texas, on this day personally appeared C. H. Gilbert, administrator of the estate of E. L. Lowe, deceased, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he executed the same for the purposes and consideration therein expressed and in the capacity therein set forth. Given under my hand and seal of office, this 17th day of July, A. D. 1890. S. P. Strong, Clerk.

"Filed for record July 18th, 1890, at 8 o'clock p. m.; recorded July 19th, 1890, at 8 o'clock a. m. S. P. Strong, County Clerk."

[1] Appellants, under their first assignment of error, complain of the action of the court in admitting in evidence the list of claims as shown by the claim register of Hale county probate record in this estate, upon the ground that the same was not based upon an application, order of sale, and order confirming the sale for the purpose of paying debts of the estate, and that in this case, the various orders subsequent showing a different purpose than the payment of debts, such evidence was immaterial and, under their second, third, fourth, and fifth assignments of error, object to the admission in evidence of the application to sell the real estate belonging to the estate of deceased, and to the order of sale granted, the report of the administrator of the sale of the property sold, and the order confirming the sale, upon substantially the same grounds; that is, that the purpose of the sale was one not authorized by law, and that there was no sufficient description of the property ordered sold and none of the property sold. The question thus presented as to the authority of the court to grant the orders referred to is decisive of this case, and we are of the opinion that the testimony objected to was admissible for the purpose of showing an order of sale by a court of competent jurisdiction not subject to collateral attack, supporting the deed of C. H. Gilbert, administrator, to J. C. Pipkin, conveying the property in controversy. Upon the evidence, the county court of Hale county unquestionably had jurisdiction of the estate of E. L. Lowe, and had authority to order any or all of his property to be sold. The purposes for which the court having authority of jurisdiction may direct a sale of property are not jurisdictional. In our opinion, such questions go to the propriety or even the validity of the court's order when tested in a direct proceeding; but, when a court having jurisdiction of the subject-matter and the parties makes an order of sale for a purpose not authorized by law, we think such order is simply erroneous, but not void, and to correct the same the law provides specific and ample remedies; but if these remedies be neglected, and the parties interested do not choose to pursue them, the order stands as the order of a court of competent jurisdiction and is valid and binding against every collateral attack.

In Poor v. Boyce, 12 Tex. 440, the petition or application of the administrator for the sale of the property recited that there had come to the hands of the administratrix certain improvements rightfully belonging to the estate, but "about which there will be a great deal of litigation and expense to the petitioner to obtain the land." For this reason, she asked for an order to sell the land. Accordingly, an order was made for the sale of the improvements, and exception was reserved to the introduction of this application and order, and the court in an opinion by Judge Wheeler, said: "The subsequent sale by order of the probate court divested the title of the heirs. The petition of the administratrix gave the court jurisdiction. Finch v. Edmonson, 9 Tex. 504. All other questions, in the absence of fraud, are concluded by the judgment. In the case of Lynch v. Baxter, 4 Tex. 431 [51 Am. Dec. 735], it was determined that it was not essential to the title of the purchaser of property at administrator's sale that the record should show a necessity for the sale. The order of sale is conclusive of that question until it be set aside by a proceeding having that object directly in view, and the purchaser, in the absence of fraud, will be protected."

In Weems v. Masterson, 80 Tex. 45, 15 S. W. 590, the application for an order of sale by a guardian of minors represented that they owned a certain tract of land which

was "constantly depreciating in value on account of depredations that are constantly being made by parties unlawfully entering upon said land and carrying off the wood and timber; * * * that it is their belief that it would be for the interest of said minors to sell the land and invest the proceeds in some other way." The court ordered the sale to be made. The title of the purchaser was attacked upon the ground that the statute did not authorize the court to order a sale of the ward's land by the guardian for the purposes expressed in the application. The opinion of the court was delivered by Chief Justice Stayton. He reviewed the decisions in Texas, from Lynch v. Baxter, down, and held that the county courts, in all matters relating to the administration of estates of deceased persons and minors, are courts of general jurisdiction, and that all presumptions will be indulged in favor of the jurisdiction of such courts when exercised over a subject-matter confided to them by law that would be indulged in favor of the jurisdiction of any other court of general jurisdiction, and that their judgments and decrees cannot be collaterally attacked unless the record shows the want of jurisdiction; that the county court of Harris county, which made the order, did have power to order and confirm the sale of lands belonging to a minor's estate; that its jurisdiction had attached to the estate of minors then being administered; that although the application for the order to sell did not state that it was necessary for the support and education of the minors or for the payment of debts, yet, if absolutely necessary to confer jurisdiction on the court, it ought to be presumed that another application had been filed before the order was made, and that the order of the court, directing the sale to be made and confirming the sale, would not be void and subject to collateral attack, although no application to sell other than that found in the record was ever made; that to hold the order of sale and the sale void, because the application set up a purpose not specified in the statute, would be like holding that a judgment of the district court could be collaterally attacked because the pleadings were defective. That in that case the proceedings of the probate court should have been held to be conclusive of the validity of the sale of the lands; that the case of McNally v. Haynes, 59 Tex. 585, in which it was suggested that, if the application for the order to sell lands of an estate should disclose the fact that the purpose or object of the sale was not such as to authorize the court to make the order, the purchaser could not rely upon it, should be disapproved; that the fact that the application may be defective cannot deprive an order of its conclusive effect in all collateral proceedings.

This is one of the great judgments rendered by Judge Stayton. It was intended to review the whole law of the subject, clarifying the principles involved, and establishing the law upon the firm basis that, the probate court having potential jurisdiction of the estates of deceased persons and minors, that jurisdiction attached to the estate by the commencement of administration proceedings on such estate in that court, and when an application was made by the administrator or guardian for the sale of lands belonging to the ward or deceased, and this application was followed by an order directing the guardian or administrator to sell the lands, it becomes immaterial, on collateral attack, whether the application was perfect or defective, whether it asks for the sale for a purpose authorized by law, or not authorized by law; that these questions went, not to the jurisdiction of the court, but to the correctness of its orders; and that the question of correctness could only be reviewed in a direct proceeding and could not be called in question in a collateral proceeding.

In Taffinder v. Merrell, 95 Tex. 95, 65 S. W. 177, 93 Am. St. Rep. 814, the application of the guardian for an order to sell his ward's land stated that: "It would be greatly to the interest of his said ward for said property to be sold, because said property is unimproved and cannot be rented for anything, and the taxes will soon consume the entire amount." No other reason was given for asking for the order of sale. The order of court likewise ordered the sale to be made at public or private sale for cash or on credit, simply reciting that it appeared to the satisfaction of the court that "it is for the best interest of the minors that said real estate be sold." Here the application and the order of sale both showed that the order was asked for and was made simply upon the ground that it would be for the best interest of the minors. But the statutes neither then, nor at any other time, have ever authorized the probate court to make a sale of land belonging to minors simply upon the ground that the court and guardian might deem it to their best interest, and certainly never did authorize the sale of land belonging to a minor simply to be relieved of the burden of paying taxes on the land. Judge Williams delivered opinion of the court, saying: "The first objection to the guardian's sale above stated (that is, that it appears from the record of the probate proceedings that said sale was made for a purpose for which a sale was not authorized by law [95 Tex. at page 100, 65 S. W. at page 178, 93 Am. St. Rep. 814]) is likewise answered by the opinion of this court in the case of Weems v. Masterson, 80 Tex. 45 [15 S. W. 590]. Under the rules laid down in that case, the jurisdiction of the county court did not depend upon the showing in the application of one of the statutory causes for

such sales. The absence of such a showing, or the statement of a reason which would not authorize the sale, might make the order of a sale erroneous; but it does not follow that it was not within the power of the court to make such order. In the language of the opinion referred to, the application for the sale was sufficient to invoke the exercise of the jurisdiction the court possessed over the subject-matter; those interested must be conclusively presumed to have had notice of the application such as the law prescribes; and the decrees of the probate court in this collateral proceeding must be deemed conclusive of the fact that the sale was made for a lawful purpose and in a lawful manner, in the absence of some evidence in the record showing to the contrary, other than that the application was defective."

[2] In other words, the doctrine of our Supreme Court is settled to this effect: That the death of a resident of a county, leaving an estate in the county, gives the probate court of that county a potential jurisdiction over all the estate of the deceased resident; that, when the administration proceedings upon said estate are instituted in said court, its active jurisdiction over that estate attaches; that when in the course of the administration of that estate the administrator files an application to have lands belonging to the estate sold, since the statutes require that notice of the application for such sale be presumed on collateral attack that they did have notice, and that thereby the court acquired jurisdiction over the persons of all persons interested in the property. The court then being a court of general jurisdiction in probate matters and having acquired jurisdiction of the subject-matter (that is, of all the property belonging to the estate) and of the person (that is, of all persons interested in the estate), it had complete and perfect power (that is, complete and perfect jurisdiction, which means jurisdiction over the subject-matter and over the person), and no difference how faulty or defective or improper the order of sale may be, these are matters which can be tested only on direct proceedings, and which cannot be raised on collateral attack, but, as to all such objections on collateral attack, the judgment of the court is conclusive and binding. Tested by this rule, which we conclude to be the law of Texas, there can be no doubt but that in this suit the order of sale made by the probate court of Hale county upon the application of C. H. Gilbert, administrator of the estate of E. L. Lowe, the sale by the administrator under that order, the confirmation of such sale upon being reported by the administrator, and the administrator's deed in favor of J. C. Pipkin, must be treated as having conferred complete title upon Pipkin to the land in controversy.

This is precisely upon the same principle in the case of Pelham v. Murray, 64 Tex. 477, 482, where a probate court had adjudged certain property exempt and not subject to sale and directed the administrator to surrender it to the widow, reciting that she was the only remaining constituent of the family, and that she was willing to accept the same in lieu of the balance due her on exemption, that the order was held not void and subject to collateral attack, although the decree was erroneous, and the property was not in fact exempt property. Judge Stayton delivered the opinion in that case also, and he says: "We are of the opinion that while the judgment was erroneous, and therefore might have been avoided by proper proceedings, it was not void and is conclusive of the question so long as it was not set aside by some direct proceedings having that end in view."

In the case of Martin v. Robinson, 67 Tex. 379, 3 S. W. 555, the Supreme Court said: "When in a collateral attack it is said that an administration was a nullity, unless some fact be then shown the words 'null and void' are used in the sense of voidable, for if there then be a fact or facts, proof of which would make the administration valid, it cannot be void, and the legal presumption is that the very fact which would give validity was proved before the court which granted the administration. The rule suggested in this respect in some cases would be the rule in a proceeding appellate in character if the cause be tried de novo; but it seems to us that no such rule can exist when the validity of an administration granted by a decree of a court of record having general jurisdiction is sought to be attacked or held for naught in a collateral proceeding, for, if it would be possible to prove facts sufficient to sustain the administration, it must be presumed on such attack that these very facts were proved before the administration was granted. We understand the rule to be, when the judgment or decree of such court is collaterally called in question, that it must be deemed valid unless it appears that no facts could have been shown which would render it so."

[3] This opinion is but another statement of the rule recognized in numerous other decisions, both in Texas and in other jurisdictions, that if a court of general jurisdiction has made an order, judgment, or decree, every presumption will be indulged in favor of the jurisdiction of the court when such order, judgment, or decree is collaterally attacked. The rule appears to be applicable in this case because it appears that there were debts existing against the estate of E. L. Lowe at the time application for the sale of property, including the property in question, was made.

[4] It appears that there was a necessity existing, at the time the application for or-

der of sale was made, to provide funds for the year's support of the minor children of deceased, and the statute makes it the duty of the court upon his own motion, apparently at the first regular term of the court after the grant of letters testamentary or of administration, to fix the amount of allowance for the support of the widow and minor children of the deceased, and, as soon as the inventory, appraisement, and list of claims are returned, to order a sale of the estate, or so much thereof as will be sufficient to raise the allowance. We think the situation was such as to authorize the probate court to make a sale of the property belonging to E. L. Lowe's estate for the support of the heirs. The order authorizing the sale directed that so much of the property should be sold as might be necessary for the support of the heirs.

[5] While there does not appear in the record any order by the court fixing the allowance for the year's support of the minor children, nor any order fixing the amount of the allowance for them, in lieu of exempt property, but such orders may have existed, and whether they did or not would not be a jurisdictional question. The court having jurisdiction to order the sale (provided the allowance had been made), a purchaser could rely on the order of sale and need not look for the order making the allowance. We think it sufficiently appears, from the evidence in support of the orders in question and of the judgment of the district court, that there was a necessity for raising an allowance for the year's support of the heirs or minor children, and that there was a necessity for raising the funds to which they were entitled in lieu of exempt property. There was also a legacy under the terms of the will of $1,280 to be raised. One of the purposes for which facts existed which would have authorized the court to make the sale, the support of the minor children, is made a ground of the application and is mentioned in the order of sale.

[6] We also think that the question as to whether the condition of the estate as it existed at the time the order of sale was granted as to the necessity of selling the lands was a question for the determination of the court in the exercise of its jurisdiction conferred by law, and that its judgment thereon is not subject to collateral attack.

[7] We are further of the opinion that the lands in controversy were sufficiently described. The patent to Lowe described the land as the E. L. Lowe pre-emption survey, of 160 acres in Hale county, known as survey No. 2, block M. & L., etc., giving field notes. E. L. Lowe and others laid out the town of Plainview and dedicated to the public the streets, alleys, and public square "of said town of Plainview in said county of

Hale, state aforesaid, as shown by the accompaning map of the said town of Plainview." It was admitted in the record that the north part of the town of Plainview was the south half of the Lowe pre-emption. There were no homestead rights in the property in controversy because Lowe with his children and M. A. Lowe, the aunt of his deceased wife, was at the time of his death residing, to use the language of Judge Kinder, "in a little old house over here about three-quarters of a mile northeast of town." The appraisers included in their appraisement 368 lots in Plainview. The administrator, in his application for authority to sell, described the property as "a certain tract of real estate belonging to the said estate of E. L. Lowe, and said real estate is here described as all those lots yet unsold belonging, situated in the county of Hale, state of Texas, and better known as the north half of the town of Plainview, patented to E. L. Lowe by virtue of the pre-emption laws of the state of Texas." The order of sale authorized C. H. Gilbert, the administrator of the estate of E. L. Lowe, deceased, "to sell so much of the real estate belonging to said estate, situated in the town of Plainview, as is necessary," etc. The administrator reported that he had made "the following sales of real estate belonging to said estate: * * * To J. C. Pipkin, lots 27, 28, 29, 30, 31, block 31, consideration $177.50, cash, July 12, 1890." The order of confirmation refers to "the above and foregoing report of C. H. Gilbert, administrator of the estate of E. L. Lowe, deceased, as to real estate sold by him belonging to said estate, and orders that said report be and the same is hereby in all things approved, and the sales mentioned therein confirmed," and Gilbert, as administrator, is authorized to make good and sufficient conveyance to several purchasers. The administrator's annual report charges him with receipts of sales of real estate during the year amounting to $2,027.-50. The deed of Gilbert, administrator, to Pipkin, conveys lots 27, 28, 29, 30, and 31, in block 31, as shown by the town plat of Plainview, Hale county, Tex. Taffinder v. Merrell, 95 Tex. 95, 65 S. W. 177, 93 Am. St. Rep. 814; Hermann v. Likens, 90 Tex. 448, 39 S. W. 282; Wells v. Polk, 36 Tex. 126; Robertson v. Johnson, 57 Tex. 64; Macmanus v. Orkney, 91 Tex. 30, 40 S. W. 715. We therefore conclude that the order of sale must be held valid as against this collateral attack. R. S. 1895, arts. 2037, 2038, 2043, 2046, 2047, 2052; Martin v. Robinson, 67 Tex. 374, 3 S. W. 550; Endel v. Norris, 93 Tex. 540, 57 S. W. 25; Lynch v. Baxter, 4 Tex. 441, 445, 446, 51 Am. Dec. 735.

[8] Nor do we think that the objection that the deed bears date before the sale of the land was reported and before the order of confirmation is of any merit, it being well established that the order of sale, report of sale, and

confirmation of sale give the purchaser title, and no deed is necessary; nor is it material that the deed was made before the order of confirmation. City of El Paso v. National Bank, 96 Tex. 501, 502, 74 S. W. 21; Rock v. Heald, 27 Tex. 527; Sypert v. McCowen, 28 Tex. 638; McBee v. Johnson, 45 Tex. 634.

[9] Appellants, under their fifteenth assignment, contend that the subsequent appointment of Mrs. M. A. Lowe, as guardian of the minor children ipso facto, superseded and ousted the administrator from his appointment, and impliedly at least terminated the administration and rendered void the orders involved in this case. In our opinion, the authorities cited by appellants do not support this contention, and we have been unable to find any that do. We do not regard the South Carolina case (McLaurin v. Thompson, Dud. 335) cited by appellant, and holding that, where it appears that in the course of administration of an estate a second administrator has been appointed, his appointment will supersede that of the former administrator, as decisive of the question raised by appellants, or even persuasive to that effect; that is, that the appointment of a guardian for minor heirs will nullify the appointment of an administrator of a deceased person's estate. Our statutes provide that, upon the death of any person intestate, his property shall vest in his heirs at law, but that all of his estate, except such as may be exempt by law from the payment of debts, shall pass to the possession of the administrator to be disposed of in accordance with law (R. S. 1911, art. 3235), and upon the appointment of Gilbert, the administrator, he became entitled to the possession and disposition of all of Lowe's estate except the exempt property. Express provision is also made by our Constitution and laws for the guardian of minor children of deceased persons to reside upon the homestead with the wards. In this case the homestead was no part of the property in controversy, but consisted of other and different property, and it appears to have been considered desirable that the minor children should continue to reside at this home with their aunt as they had previously resided there with her and their father. It appears therefore that there was sufficient reason for her appointment as guardian, in order to enable her legally to occupy with the minors the homestead which their father had left them. We think the intention also evidently was that Mrs. Lowe should occupy and use the homestead and other exempt property with the minor children, thereby lessening the expense of their rearing and maintenance, while her brother Gilbert took out letters of administration for the purpose of handling the other property belonging to Lowe's estate, in accordance with law, and that there was no necessary conflict between the jurisdiction of Mrs. Lowe as guardian and Gilbert as administrator of the estate. Neither does it appear from the record that upon the appointment of said guardian any order was made and entered of record terminating said administration and discharging the administrator; but it appears from the record that the court recognized the necessity of the existence of both the guardianship and the administration within their respective spheres, and in this we cannot say there was error.

Having carefully examined appellants' remaining assignments not hereinbefore specifically discussed, and finding no reversible error raised under any or either of them, we conclude that the judgment appealed from should be in all things affirmed, and it is, accordingly, so ordered.